IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAKE ROEPKE, On Behalf of Himself and All Others Similarly Situated, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:22-cv-2011 |
| J&S UNDERGROUND NETWORKS, INC. (a/k/a Lone Star Digging, Inc.), STACI FLURY, and JERRY CHAFFIN, | § § § § | FLSA COLLECTIVE ACTION |
| Defendants. | § § § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Jake Roepke ("Plaintiff"), on behalf of himself and all others similarly situated, files this Complaint against J&S Underground Networks, Inc. (a/k/a Lone Star Digging, Inc.) ("J&S"), Staci Flury ("Ms. Flury"), and Jerry Chaffin ("Mr. Chaffin") (collectively "Defendants"), showing in support as follows:

**I.   NATURE OF THE CASE**

1.   This is a civil action brought by Plaintiff, individually and as a collective action, pursuant to the federal Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the federal Portal-to-Portal Pay Act, 29 U.S.C. §§ 251-262, (collectively "FLSA") for Defendants' failure to pay Plaintiff and the putative collective action members time and one-half their respective regular rates of pay for all hours worked over 40 during each seven-day workweek as employees of Defendants.

2.   Plaintiff also alleges individual claims against Defendants for violations of the FLSA's anti-retaliation provision.

3.   J&S provides underground boring, trenching, and utilities installation services (collectively "Boring Services").

*Plaintiff's Original Complaint – Page* 1

4.      Plaintiff, on behalf of himself and all others similarly situated, alleges that J&S, Ms. Flury, and/or Mr. Chaffin are and/or were employers and/or joint employers of Plaintiff and the putative collective action members relative to the claims in this lawsuit.

5.      Defendants tracked daily time worked by Plaintiff and the putative collective action members, other than compensable travel time, by having Plaintiff and the putative collective action members log in and log out using a mobile device app. However, Defendants had a practice and policy of reducing the number of hours worked as reported by Plaintiff and the putative collective action members in connection with paying wages owed (the "Time Shaving").

6.      Plaintiff and the putative collective action members regularly worked on Defendants' projects which required overnight stays away from their respective homes for many consecutive days or weeks at a time. Travel from home to the relevant work location and vice-versa routinely cut across the respective normal working hours of Plaintiff and the putative collective action members during working days and/or nonworking days. Such travel is compensable time pursuant to the FLSA. However, Defendants did not count that travel time as compensable time or otherwise pay Plaintiff and the putative collective action members wages for that compensable travel time (the "Unpaid Travel Time").

7.      Plaintiff and the putative collective action members routinely worked more than 40 hours per seven-day workweek as employees of Defendants exclusive of the Time Shaving and/or Unpaid Travel Time. However, Defendants did not pay Plaintiff and the putative collective action members time and one half their respective regular rates of pay for all hours worked over 40 in each and every seven-day workweek due to the Time Shaving and/or Unpaid Travel Time.

8. Defendants' failure to pay Plaintiff and the putative collective action members time and one-half their respective regular rates of pay for each and every hour worked over 40 per seven-day workweek is a violation of the FLSA.

9. Plaintiff, on behalf of himself and all others similarly situated, seeks all damages available under the FLSA, including unpaid overtime wages, liquidated damages, legal fees, costs, and post-judgment interest.

10. In late July 2022, Plaintiff complained to Ms. Flury about Defendants' Time Shaving practices and unpaid wages, including overtime premiums, to Plaintiff and his co-workers. Ms. Flury terminated Plaintiff's employment within approximately 24 hours after that complaint. That termination of employment violated the FLSA's anti-retaliation provision.

11. Plaintiff seeks all damages available for Defendants' violations of the FLSA's anti-retaliation provision including lost wages, mental anguish damages, liquidated damages, legal fees, costs, and post-judgment interest.

## II. THE PARTIES, JURISDICTION, AND VENUE

**A.  Plaintiff Jake Roepke**

12. Plaintiff is a natural person who currently resides in Ector County, Texas. He has standing to file this lawsuit.

13. During times that Plaintiff was employed by J&S, his home residence was generally in or near Midlothian, Texas.

**B.  Defendant J&S Underground Networks, Inc. (a/k/a Lone Star Digging, Inc.)**

14. J&S is a domestic for-profit corporation.

15. J&S's principal place of business is located at 2800 Post Oak Road, Wilmer, Dallas County, Texas. Plaintiff and the putative collective action members routinely reported to that

*Plaintiff's Original Complaint – Page* 3

location for parts, equipment, and maintenance. Ms. Flury maintained an office at that location and that location was used as the base of operations to assign, control, and direct the work performed by Plaintiff and the putative collective action members.

16. At all times relevant to this lawsuit, J&S is and has been an "enterprise engaged in commerce" as defined by the FLSA.

17. At all times relevant to this lawsuit, J&S employed two or more employees who engaged in "commerce" as that term is used in connection with the FLSA.

18. At all times relevant to this lawsuit, J&S employed two or more employees who engaged in commerce and/or who handled, sold, and/or otherwise worked on goods and/or materials that have been moved in and/or produced for commerce by any person. Examples of such goods and/or materials include tools, boring equipment, drilling equipment, trenching equipment, fuel, computers, computer accessories, and phones.

19. On information and belief, J&S has had annual gross sales or business volume in excess of $500,000 during each of the following years – 2020, 2021, and 2022.

20. J&S may be served with summons through its registered agent, Stacy Flury, 12300 FM 1615, Athens, Texas 75752.

C. **Defendant Stacy Flury**

21. Ms. Flury is a natural person and is believed to be a resident of Athens, Texas.

22. Ms. Flury is an owner and director of J&S.

23. Ms. Flury had operating control over employees of J&S.

24. Ms. Flury had operating control over Plaintiff and the putative collective action members relative to their employment with J&S.

25. Ms. Flury possessed the power to hire and fire employees of J&S, including Plaintiff. For example, Ms. Flury hired Plaintiff. Ms. Flury also terminated Plaintiff's employment.

26. Ms. Flury supervised and controlled work schedules for employees of J&S, including Plaintiff. For example, Ms. Flury routinely assigned Plaintiff's work schedule and/or work assignments.

27. Ms. Flury controlled the conditions of employment for employees of J&S, including Plaintiff. For example, Ms. Flury determined the jobs that Plaintiff and the putative collective action members would perform for Defendants, including when and where to perform those jobs.

28. Ms. Flury determined the rate and method of payment for employees of J&S, including Plaintiff. For example, Ms. Flury set Plaintiff's method and rate of pay, which was approximately $26.50 per hour.

29. Ms. Flury maintained and maintains employment records of employees of J&S, including Plaintiff. For example, Ms. Flury maintains time and pay records for employees of J&S and engaged in the Time Shaving complained of in this lawsuit.

30. Ms. Flury may be served with summons at 12300 FM 1615, Athens, Texas 75752.

D. **Defendant Jerry Chaffin**

31. Mr. Chaffin is a natural person.

32. J&S's certificate of formation filed with the Texas Secretary of State in June 2012 list Ms. Flury and Mr. Chaffin as directors of J&S. However, Ms. Flury signed a certificate of amendment on November 5, 2017 that was filed with the Texas Secretary of State which lists the directors of J&S as herself and HDD Solutions, LLC. That filing does not list Mr. Chaffin as a director of J&S. Then, on November 6, 2017, Ms. Flury signed a certificate of amendment that

was filed with the Texas Secretary of State which lists the directors of J&S as herself and Mr. Chaffin while omitting HDD Solutions, LLC. However, between 2018 to 2021, Ms. Flury signed documents which are currently on file with the Texas Secretary of State that omit Mr. Chaffin as an owner and/or officer of J&S. For example, the Texas Franchise Tax Public Information Report on file with the Texas Secretary of State signed by Ms. Flury on October 26, 2021 does not list Mr. Chaffin as an owner or officer of J&S. The current management data listed with the Texas Secretary of State for J&S lists only Ms. Flury as a director of J&S and omits Mr. Chaffin.

33. Based on data on file with the Texas Secretary of State, Ms. Flury may have terminated Mr. Chaffin's official role as an owner and/or officer of J&S. Nevertheless, Mr. Chaffin engaged in some operating control over Plaintiff and the putative collective action members thereafter in the time period relevant to this lawsuit.

34. At times, Mr. Chaffin was present at Boring Service work locations worked by Plaintiff and the putative collective action members in a management role. Mr. Chaffin could and did observe Plaintiff and the putative collective action members performing their Boring Service work for Defendants.

35. Mr. Chaffin could hire and fire employees of J&S.

36. At times, Mr. Chaffin set the work schedules and work assignments for employees of J&S, including Plaintiff.

E. **Jurisdiction and Venue**

37. Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

38. The Court has personal jurisdiction over Defendants based on both general and specific jurisdiction.

39. During all times relevant to this lawsuit, Defendants have done business in the State of Texas and continue to do business in the State of Texas.

40. The Court has subject matter jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. § 1331, because Plaintiff bases his claims on federal law, namely the FLSA.

41. Venue is proper in this Court because J&S's principal place of business is located in this Judicial District and Division. Furthermore, a substantial part of the events or omissions giving rise to the claims in this lawsuit occurred within this Judicial District and Division.

### III. FACTUAL BACKGROUND

42. Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

43. J&S provides underground boring, trenching, and utilities installation services.

44. Plaintiff and the putative collective action members were employed by J&S to perform manual labor in connection with J&S's Boring Services.

45. Plaintiff's dates of employment with J&S are approximately April 8, 2020 to approximately July 22, 2022.

46. J&S paid Plaintiff on an hourly basis.

47. Plaintiff's hourly rate of pay with J&S was approximately $26.50 per hour.

48. Plaintiff worked with numerous other hourly paid Boring Service crew member employees of Defendants.

49. During their respective employment periods with Defendants, the putative collective action members typically worked as crew members with Plaintiff in connection with Defendants' Boring Services.

50. J&S's primary shop/yard that supported the work of Plaintiff and the putative collective action members is located in Wilmer, Dallas County, Texas.

51. While Plaintiff and the putative collective action members sometimes reported to that primary shop/yard location, they primarily worked at Boring Services projects throughout Texas and New Mexico.

52. J&S tracked daily time worked by having Plaintiff log in and log out using a mobile device app. The mobile device app was known as T Sheets.

53. T Sheets is a system operated by Intuit, Inc.

54. J&S tracked daily time worked of hourly Boring Services employees who worked with Plaintiff by having them log in and log out using a mobile device app/T Sheets.

55. However, Defendants had a practice and policy of reducing the number of hours worked by Plaintiff other hourly Boring Services employees who worked with Plaintiff by altering time worked data in the time keeping system used by Defendants. For example, Defendants would deduct time for meal breaks when Plaintiff and the putative collective action members did not have or receive corresponding bona fide meal breaks. Ms. Flury could and did alter the hours worked by Plaintiff and the putative collective action members from her office location in Wilmer, Texas. Defendant's Time Shaving was arbitrary and done to reduce the amount of wages Plaintiff and the putative collective action members earned and were owed by Defendants.

56. Plaintiff and the putative collective action members regularly worked on Defendants' Boring Services projects which required overnight stays away from their respective homes for many consecutive days or weeks at a time. Work locations of Plaintiff and the putative collective action members performing Boring Services work for Defendants include Dallas County, Texas, areas in West Texas near Midland, Texas, areas in West Texas near Brownwood, Texas, and areas in New Mexico near Carlsbad, New Mexico.

57. Travel from home to the relevant work location and vice-versa routinely cut across the respective normal working hours of Plaintiff and the putative collective action members during working days and/or nonworking days. Such travel is compensable time pursuant to the FLSA. However, Defendants did not count that travel time as compensable time or otherwise pay Plaintiff and the putative collective action members wages for that compensable travel time.

58. Defendants did not count the Unpaid Travel Time as time worked by Plaintiff and the putative collective action members.

59. Plaintiff regularly worked in excess of 40 hours per seven-day workweek as an employee of J&S.

60. The putative collective action members each regularly worked in excess of 40 hours per seven-day workweek as employees of J&S.

61. Plaintiff and the putative collective action members routinely worked more than 40 hours per seven-day workweek as employees of Defendants exclusive of the Time Shaving and/or Unpaid Travel Time. However, Defendants did not pay Plaintiff and the putative collective action members time and one-half their respective regular rates of pay for all hours worked over 40 in each and every seven-day workweek due to the Time Shaving and/or Unpaid Travel Time.

62. Defendants' failure to pay Plaintiff and the putative collective action members time and one-half their respective regular rates of pay for each and every hour worked over 40 per seven-day workweek is a violation of the FLSA.

63. On approximately July 21, 2022, Plaintiff complained to Ms. Flury, in person, about Defendants' Time Shaving practices and unpaid wages, including overtime premiums, to Plaintiff and his co-workers. That particular complaint occurred at J&S's business location in Wilmer, Texas.

64. Ms. Flury terminated Plaintiff's employment on approximately July 22, 2022.

65. That termination of employment violated the FLSA's anti-retaliation provision.

## IV. CONTROLLING LEGAL RULES

66. The FLSA states that "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

67. "Employ" includes to suffer or permit work. 29 U.S.C. § 203(g).

68. "Travel that keeps an employee away from home overnight is travel away from home. Travel away from home is clearly worktime when it cuts across the employee's workday. The employee is simply substituting travel for other duties. The time is not only hours worked on regular working days during normal working hours but also during the corresponding hours on nonworking days." 29 C.F.R. § 785.39.

69. Under the FLSA's Continuous Workday Rule, "[p]eriods of time between the commencement of the employee's first principal activity and the completion of his last principal activity on any workday must be included in the computation of hours worked." 29 C.F.R. § 790.6.

70. An employee is employed for purposes of the FLSA if the employer has "knowledge, actual or constructive, that [s]he was working." *Mack v. Avara Cmty. Health Servs.*, No. 3:13-CV-1976-P, 2016 U.S. Dist. LEXIS 129266, at *3-4 (N.D. Tex. Feb. 5, 2016) (*citing Newton,* 47 F.3d at 748). "Constructive knowledge exists if by exercising reasonable diligence an employer would become aware that an employee is working overtime." *Von Friewalde v. Boeing Aero. Operations, Inc.*, 339 F. App'x 448, 455 (5th Cir. 2009) (quotations and citation omitted).

71. "[I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so." 29 C.F.R. § 785.13; *accord Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995) (same).

72. "Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are [compensable] rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating." 29 C.F.R. § 785.19.

73. "To be classified as a bona fide meal period, an employee 'must be completely relieved from duty for the purpose of eating meals' during that period." *Bernard v. IBP, Inc. of Nebraska,* 154 F.3d 259, 264–65 (5th Cir. 1998) (citing 29 C.F.R. § 785.19). The Fifth Circuit employs a "predominant benefit test" to determine if a meal break is a bona-fide meal break. *Id.* "The critical question under that test is whether the meal period is used predominantly or primarily for the benefit of the employer or for the benefit of the employee." *Id.* "The employer bears the burden to show that meal time qualifies for this exception from compensation." *Id.*

74. Federal law requires employers to make and keep accurate and detailed payroll data for non-exempt employees. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2. Among other things, the regulations require employers to make and keep payroll records showing data such as the

employee's name, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime pay is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period and date of payment and pay period covered by the payment, and records of remedial payments. 29 C.F.R. § 516.2(a)&(b). Employers are required to maintain the foregoing data for a minimum of three years. 29 C.F.R. § 516.5.

75. "An employer may not withhold or divert any part of an employee's wages unless the employer: (1) is ordered to do so by a court of competent jurisdiction; (2) is authorized to do so by state or federal law; or (3) has written authorization from the employee to deduct part of the wages for a lawful purpose." Tex. Lab. Code § 61.018.

76. The FLSA defines the "regular rate" as including "all remuneration for employment paid to, or on behalf of, the employee … ." 29 U.S.C. § 207(e).

77. With a few limited exceptions, all remuneration given to an employee must be included in the employee's regular rate calculation. 29 U.S.C. § 207(e); 29 C.F.R. § 778.108; *accord Allen v. Board of Pub. Educ. For Bibb Cty.*, 495 F. 3d 1306, 1311 (11th Cir. 2007); *see also Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 927 (E.D. La. 2009).

78. "Any employer who violates the provisions of [29 U.S.C. § 207] … shall be liable to the employee or employees affected in the amount of their … unpaid overtime compensation … and in an additional equal amount as liquidated damages. … The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

79. "The FLSA defines an employee as any individual employed by an employer." *Lovo v. Express Courier Intl., Inc.*, 4:16-CV-853-Y, 2019 WL 387367, at *2 (N.D. Tex. Jan. 30,

2019) (citing 29 U.S.C. § 203(e)(1) (brackets and quotations omitted)). "Employer includes any person acting directly or indirectly in the interest of an employer in relation to an employee." *Id.* (citing 29 U.S.C. § 203(d)). "[E]mploy means to suffer or permit to work." *Id.* (citing 29 U.S.C. § 203(g) (quotations omitted)). Accordingly, "the definition of employee under the FLSA is particularly broad." *Id.* (citing *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008) (brackets omitted)).

80. Individual owners, officers, and/or managers may be liable, along with corporate employer, for FLSA damages to employees. *See, e.g., Gray v. Powers*, 673 F.3d 352, 357 (5th Cir. 2012). ("The dominant theme in the case law is that those who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies."). To determine whether an individual or entity is an employer, the court considers whether the alleged employer: "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012) (citing *Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir.2010)). At least one of those four elements needs to be present in order to show that an individual is an employer under the FLSA. *Gray*, 673 F.3d at 357.

81. "The joint employment doctrine treats a worker's employment by joint employers as one employment for purposes of determining compliance with the FLSA's wage and hour requirements." *Seong Song v. JFE Fran., Inc.*, 394 F. Supp. 3d 748, 754–55 (S.D. Tex. 2019) (citing *Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125, 134 (4th Cir. 2017); 29 C.F.R. § 791.2(a) (quotations omitted)). "Under the FLSA, a single worker may stand in the relation of an employee to two or more employers at the same time." *Id.* at 754 (citing 29 C.F.R. § 791.2(a)

(quotations and brackets omitted)). "If all the relevant facts establish that those employers are acting entirely independently of each other and are completely disassociated with respect to the employment of the employee, then they are treated as separate and distinct employers. *Id.* (quotation and citation omitted). "On the other hand, if the facts show that employment by one employer is not completely disassociated from employment by the other employer(s), then they are treated as joint employers." *Id.* (citing 29 C.F.R. § 791.2(a); *Donovan v. Sabine Irrigation Co.*, 695 F.2d 190, 194 (5th Cir. 1983) (recognizing that the term "employer" "has been interpreted to encompass one or more joint employers")).

82. "Thus, a finding of joint employment requires that the hours an employee works for each joint employer be aggregated for overtime pay purposes and that the joint employers be held jointly and severally liable for any failure to pay proper overtime compensation. *Id.* (citing *Wirtz v. Hebert*, 368 F.2d 139, 141 (5th Cir. 1966); *Mitchell v. John R. Cowley & Bro., Inc.*, 292 F.2d 105, 111–12 (5th Cir. 1961). "Joint employment is construed broadly, and labels and contractual terms used in a particular relationship are largely unimportant." *Id.* "Joint employment is construed broadly, and labels and contractual terms used in a particular relationship are largely unimportant." *Parker v. ABC Debt Relief, Ltd. Co.*, 3:10-CV-1332-P, 2013 WL 371573, at *4 (N.D. Tex. Jan. 28, 2013).

83. "It is unlawful for any person … to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]. 29 U.S.C. § 215(a)(3).

84. Any employer who violates the provisions of [29 U.S.C. § 215(a)(3)] shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of [29 U.S.C. § 215(a)(3)], including without limitation employment, reinstatement, promotion, and the payment

of wages lost and an additional equal amount as liquidated damages. 29 U.S.C. § 216(b). "The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

### V.   FLSA CLAIMS

85. Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

86. Plaintiff was employee of J&S in 2020, 2021, and 2022 pursuant to the FLSA. 29 U.S.C. § 203(e).

87. At times relevant, the putative collective action members are and/or were employees of J&S. 29 U.S.C. § 203(e).

88. Plaintiff was an employee of Ms. Flury in 2020, 2021, and 2022 pursuant to the FLSA. *Gray*, 673 F.3d at 357.

89. At times relevant, the putative collective action members are and/or were employees of Ms. Flury pursuant to the FLSA. *Gray*, 673 F.3d at 357.

90. At times relevant, Plaintiff was an employee of Mr. Chaffin pursuant to the FLSA. *Gray*, 673 F.3d at 357.

91. At times relevant, the putative collective action members are and/or were employees of Mr. Chaffin pursuant to the FLSA. *Gray*, 673 F.3d at 357.

92. At times relevant, J&S, Ms. Flury, and/or Mr. Chaffin were joint employers of Plaintiff. *Wirtz*, 368 F.2d at 141.

93. At times relevant, J&S, Ms. Flury, and/or Mr. Chaffin are and/or were joint employers of the putative collective action members. *Wirtz*, 368 F.2d at 141.

94. At times relevant, J&S is and/or has been an eligible and covered employer under the FLSA relative to Plaintiff's employment with Defendants. 29 U.S.C. § 203(d).

95. At times relevant, J&S is and/or has been an eligible and covered employer under the FLSA relative to the employment of the putative collective action members with Defendants. 29 U.S.C. § 203(d).

96. At times relevant, Ms. Flury is and/or has been an eligible and covered employer under the FLSA relative to Plaintiff's employment with Defendants. 29 U.S.C. § 203(d).

97. At times relevant, Ms. Flury is and/or has been an eligible and covered employer under the FLSA relative to the employment of the putative collective action members with Defendants. 29 U.S.C. § 203(d).

98. At times relevant, Mr. Chaffin is and/or has been an eligible and covered employer under the FLSA relative to Plaintiff's employment with Defendants. 29 U.S.C. § 203(d).

99. At times relevant, Mr. Chaffin is and/or has been an eligible and covered employer under the FLSA relative to the employment of the putative collective action members with Defendants. 29 U.S.C. § 203(d).

100. In 2020, 2021, and 2022, J&S is and/or was an enterprise engaged in commerce under the FLSA. 29 U.S.C. § 203(s)(1)(A).

101. Plaintiff was a covered employee under 29 U.S.C. § 207(a)(1) and 29 U.S.C. § 215(a)(3) relative to his employment with Defendants.

102. The putative collective action members are and/or were each covered employees under 29 U.S.C. § 207(a)(1) and 29 U.S.C. § 215(a)(3) relative to their respective employment with Defendants.

103. Defendants did not maintain an accurate number of the daily and weekly hours worked by Plaintiff for Defendants relative to the Unpaid Travel Time. 29 C.F.R. § 516.2(a)(7).

104. Defendants did not maintain an accurate number of the daily and weekly hours worked by the putative collective action members relative to the Unpaid Travel Time. 29 C.F.R. § 516.2(a)(7).

105. Where the employer does not keep an accurate record of the daily and weekly hours worked by an employee as required by the FLSA, the employee may prove their unpaid overtime hours and damages "as a matter of just and reasonable inference." *Olibas v. Native Oilfield Servs., LLC*, 104 F. Supp. 3d 791, 801 (N.D. Tex. 2015), *aff'd sub nom. Olibas v. Barclay*, 838 F.3d 442 (5th Cir. 2016).

106. Plaintiff and the putative collective action members routinely worked in excess of 40 hours per seven-day workweek. However, Defendants did not pay Plaintiff and the putative collective action members time and one-half their respective regular rates of pay for all hours worked over 40 in each and every seven-day workweek as employees of Defendants due to Time Shaving and/or Unpaid Travel Time.

107. The failure of Defendants to pay Plaintiff and the putative collective action members time and one-half their respective regular rates of pay for each and every hour worked over 40 in all applicable seven-day workweeks is a violation of the FLSA.

108. Plaintiff, on behalf of himself and all others similarly situated, alleges that Defendants are jointly and severally liable for his/their unpaid overtime wage related damages in this lawsuit.

109. Defendants' violations of the FLSA are and/or were willful within the meaning of 29 U.S.C. § 255(a). At all material times, Defendants are and were aware that Plaintiff and the putative collective action members were not paid time and one-half their respective regular rates of pay for all hours worked over 40 in each and every seven-day workweek relative Time Shaving

and Unpaid Travel Time. Ms. Flury, an owner and director of J&S, engaged in activity that resulted in the Time Shaving. Accordingly, Defendants knew and/or had reason to believe that Plaintiff and the putative collective action members were working overtime hours for which they were not paid all FLSA overtime wage compensation owed. Defendants also failed to keep an accurate record of the daily and weekly hours worked by Plaintiff and the putative collective action members relative to the Unpaid Travel Time which is further evidence of a willful violation of the FLSA. *See Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 844 (6th Cir. 2002) ("Although the FLSA does not permit an employee to bring a private action for recordkeeping violations, an employer's recordkeeping practices may nonetheless corroborate an employee's claims that the employer acted willfully in failing to compensate for overtime."); *Pye v. Oil States Energy Servs., LLC*, 233 F. Supp. 3d 541, 565 (W.D. Tex. 2017) (same); *Lackey v. SDT Waste & Debris Servs., LLC*, No. 11-1087, 2014 U.S. Dist. LEXIS 85722, at *13 (E.D. La. June 23, 2014) (same).

110. Plaintiff, on behalf of himself and all others similarly situated, seeks all damages available for J&S's, Ms. Flury's, and/or Mr. Chaffin's failure to timely pay all FLSA overtime wages owed.

111. Plaintiff is and/or was an "employee" as that term is used in the FLSA's anti-retaliation provision. 29 U.S.C. § 215(a)(3).

112. J&S, Ms. Flury, and/or Mr. Chaffin are and/or were each a "person" as that term is used in the FLSA's anti-retaliation provision. 29 U.S.C. § 215(a)(3).

113. Plaintiff alleges individual claims against Defendants for violations of the FLSA's anti-retaliation provision. Plaintiff alleges that J&S, Ms. Flury, and/or Mr. Chaffin are jointly and severally liable for his retaliation related damages in this lawsuit.

114. Plaintiff seeks all damages available for J&S's, Ms. Flury's and/or Mr. Chaffin's violations of the FLSA's anti-retaliation provision.

## VI.   FLSA COLLECTIVE ACTION

115. Plaintiff seeks to represent a collective action under 29 U.S.C. § 216(b) on behalf of himself and all current and/or former hourly paid Boring Services employees of Defendants who Defendants did not timely pay time and one-half their respective regular rates of pay for all overtime hours worked due to Defendants' practices and/or policies relative to (1) Time Shaving and/or (2) Unpaid Travel Time.

116. Because Defendants did not timely pay all overtime premium compensation owed to those other hourly paid Boring Services employees, Plaintiff and the putative collective action members are all similarly situated within the meaning of Section 216(b) of the FLSA.

117. Plaintiff reserves the right to establish sub-classes and/or modify collective action definition in any collective action certification motion or other filing.

## VII.   JURY DEMAND

118. Plaintiff demands a trial by jury.

## VIII.   DAMAGES AND PRAYER

119. Plaintiff asks that the Court issue a summons for Defendants to appear and answer, and that Plaintiff and/or the collective action members be awarded a judgment against J&S, Ms. Flury, and/or Mr. Chaffin and/or order(s) from the Court for the following:

  a. An order certifying this case (other than retaliation claims) as a FLSA collective action and requiring notice to be issued to all putative collective action members,

  b. All damages allowed by the FLSA, including unpaid overtime wages,

  c. Liquidated damages in an amount equal to unpaid overtime wages,

    d. All damages allowed for violations of the FLSA's anti-retaliation provision as to Plaintiff,

    e. Reasonable legal fees,

    f. Costs,

    g. Post-judgment interest, and/or

    h. All other relief to which Plaintiff and/or the collective action members is/are entitled.

Date: September 9, 2022.

Respectfully submitted,

By:    s/ Allen R. Vaught  
       Allen R. Vaught  
       Attorney-In-Charge  
       TX Bar No. 24004966  
       Vaught Firm, LLC  
       1910 Pacific Ave., Suite 9150  
       Dallas, Texas 75201  
       (972) 707-7816 – Telephone  
       (972) 591-4564 – Facsimile  
       avaught@txlaborlaw.com

ATTORNEY FOR PLAINTIFF